IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| **JANETTE SANTIAGO,** | : | CIVIL ACTION |
| Plaintiff, | : | |
| v. | : | NO. 09-1269 |
| **EASTERN SAVINGS BANK, FSB,** | : | |
| Defendant. | : | |

DuBOIS, J.                                                 February 28, 2011

**M E M O R A N D U M**

## I. INTRODUCTION

The plaintiff in this case, Janette Santiago, alleges that her mortgage broker deceived her into signing a mortgage with terms that differed from those that he promised her. The defendant in this action is not the broker, however. Rather, Santiago asserts claims arising under the Pennsylvania Unfair Trade Practices and Consumer Protection Law ("UTPCPL"), 73 Pa. Cons. St. § 201-1 et seq., against the lender on her mortgage, Eastern Savings Bank, FSB ("ESB" or "the Bank"). Presently before the Court is ESB's motion for summary judgment.[1] For the reasons that follow, the motion is granted.

## II. BACKGROUND

The factual background of this case is set forth only to the extent necessary to explain the

---

[1] The motion became fully briefed on December 31, 2010, when Santiago advised the Court she would not be filing a sur-reply, despite the Court granting her leave to do so.

Court's decision on the instant motion. In summary, Santiago alleges that, some time in early 2006, she called Dan Washinger, a mortgage broker at Common Mortgage Services, Inc. ("Common") about refinancing the mortgage on her Oxford, Pennsylvania home. (Fourth Am. Compl. ¶¶ 11-13.) Washinger promised to obtain a loan for Santiago with certain terms, only to pressure and trick her into signing off on one with different terms that were detrimental to her, including a higher interest rate. (Id. at ¶¶ 46-59.) Santiago and her ex-husband, Joseph White, executed a mortgage in favor of Eastern to obtain the $189,000 loan. (See Def.'s Mot. for Summ. J., Ex. B.)

During the time she sought the loan, Santiago signed a Fee Disclosure Agreement ("Agreement") with Common. (Id., Ex. G.) The Agreement specified that Santiago would pay Common $5,670 (3% of $189,000) for its services. (Id., Ex. G ¶ 4.) The Agreement further specified that "any prospective lender" and Common were "independent contractors, and neither of them shall be responsible for any act, omissions, delays, etc. of the other." (Id., Ex. G ¶ 6.)

Separately, and before plaintiff signed any documents, Common and ESB entered into a Service Provider Agreement ("Provider Agreement"), which established the terms for the companies' relationship. (Id., Ex. J.) In pertinent part, the Provider Agreement states that Common "shall at all times remain an independent contractor" and that the Bank "shall have sole discretion in determining whether to approve or reject a loan underwriting package submitted by [Common]." (Id., Ex. J. ¶ 2.)

## III. LEGAL STANDARD

In considering a motion for summary judgment, "the court is required to examine the evidence of record in the light most favorable to the party opposing summary judgment, and

resolve all reasonable inferences in that party's favor." Wishkin v. Potter, 476 F.3d 180, 184 (3d Cir. 2007). The party opposing the motion, however, cannot "rely merely upon bare assertions, conclusory allegations or suspicions" to support its claim. Fireman's Ins. Co. v. DuFresne, 676 F.2d 965, 969 (3d Cir. 1982). After examining the evidence of record, a court should grant summary judgment if the moving party "shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a); accord Celotex Corp. v. Catrett, 477 U.S. 317, 322-23 (1986).

A factual dispute is material when it "might affect the outcome of the suit under the governing law," and genuine when "the evidence is such that a reasonable jury could return a verdict for the nonmoving party." Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986). "Where the record taken as a whole could not lead a rational trier of fact to find for the nonmoving party, there is no 'genuine issue for trial.'" Matsushita Elec. Indus. Co. v. Zenith Radio Corp., 475 U.S. 574, 587 (1986) (citation omitted).

## IV. DISCUSSION

Plaintiff posits two theories of liability against ESB in her Fourth Amended Complaint. First, Santiago asserts that ESB is vicariously liable for Washinger's actions because the Bank and the broker were part of a joint venture.[2] Second, plaintiff argues that ESB violated the

---

[2] The Fourth Amended Complaint asserts several other theories of vicarious liability as well, including agency by implied authority and ratification. In her response to the motion for summary judgment, however, Santiago states that she "waives all other theories of agency presented in the [Fourth Amended Complaint] except agency re: vicarious liability via a joint venture." (Pl.'s Resp. Br. at 3.)

UTPCPL directly by concealing charges on a Truth in Lending ("TIL") form.[3] The Court concludes that neither theory has merit, as plaintiff has not presented any evidence sufficient to create a genuine issue of material fact regarding ESB's liability.

A. Vicarious Liability: Joint Venture

In Pennsylvania, "[a] joint venture is not a status created or imposed by law; it is a relationship voluntarily assumed and arising wholly from contract." Snellbaker v. Herrmann, 462 A.2d 713, 716 (Pa. Super. Ct. 1983). There are at least three "essential" elements to a joint venture:

> 1) each party to the venture must make a contribution, not necessarily of capital, but by way of services, skill, knowledge, materials or money;
> 2) profits must be shared among the parties; [and]
> 3) [t]here must be a joint proprietary interest and a right of mutual control over the subject matter of the enterprise . . .

Reis v. Barley, Snyder, Senft & Cohen LLC, 667 F. Supp. 2d 471, 494 (E.D. Pa. 2009) (quoting Keeler v. Int'l Harvester Used Truck Ctr., 463 A.2d 1176, 1178 (Pa. Super. Ct. 1983)). In addition, "[u]sually, there is a single business transaction rather than a general and continuous transaction." Id.

In support of her contention that a joint venture existed in this case, plaintiff alleges that ESB paid Common a fee known as a Yield Spread Premium ("YSP") and that the two companies split fees related to the loan deal. Plaintiff has failed, however, to provide any evidence to support her allegations.

First, a YSP is a fee paid from a lender to a broker "when [the broker] originates a loan at

---

[3] This claim was never properly set forth in the Fourth Amended Complaint. Nonetheless, the Court elects to address and deny it on the merits.

an interest rate higher than the minimum interest rate approved by the lender for a particular loan. The lender then rewards the broker by paying it a percentage of the yield spread (i.e., the difference between the interest rate specified by the lender and the actual interest rate set by the broker at the time of origination) multiplied by the amount of the loan." Parker v. Long Beach Mortg. Co., 534 F. Supp. 2d 528, 536 (E.D. Pa. 2008).

Plaintiff cites to the Agreement, (Def.'s Mot. for Summ. J., Ex. G), as evidence a YSP was paid. But this document is a contract for services between plaintiff – not ESB – and Common. The Agreement is irrelevant to the relationship between ESB and Common and provides no evidence of the payment of a YSP. See id. at ¶ 4 ("Applicant understands that the enforcement of this agreement is exclusively a matter between the Applicant and [Common], and shall not in any way affect the lender.").

Second, while plaintiff has shown that both ESB and Common received fees from the loan deal, (see Pl.'s Resp. Br., Ex. B), she has provided no evidence that the two entities split fees or shared profits. The bare claim that fees were split does not constitute evidence sufficient to avoid summary judgment. See Christman v. Cigas Machine Shop, Inc., 293 F. Supp. 2d 538, 541 (E.D. Pa. 2003) ("[T]he non-moving party may not defeat a motion for summary judgment by the mere assertion, not documented by record evidence, that the facts are sufficient to support his or her claims.").

On the other hand, there is considerable evidence that ESB and Common did not enter into a joint venture because there was no "right of mutual control" over the loan. For example, the Provider Agreement between the Bank and Common states, "[ESB] shall have sole discretion in determining whether to approve or reject a loan underwriting package submitted by

[Common]." (Def.'s Mot. for Summ. J., Ex. J. ¶ 2.) Plaintiff has not countered with any contrary evidence of common control.

The Court thus concludes there is no genuine issue of material fact as to ESB's position that it did not enter into a joint venture with Common. Thus, vicarious liability cannot be imposed against ESB on that ground.

B. <u>Direct Liability: Truth in Lending Form</u>

Santiago next argues ESB is directly liable under the UTPCPL for failing to disclose $362.72 in purported "finance charges" on the TIL form.[4] Plaintiff asserts that this conduct violates the catch-all clause of the UTPCPL, which makes unlawful "fraudulent or deceptive conduct which creates a likelihood of confusion or of misunderstanding." 73 Pa. Cons. St. §§ 201-2(4)(xxi), 201-3. The Court concludes there is no basis for the imposition of direct liability against ESB under the UTPCPL.

Plaintiff's argument fails for two reasons. First, judges in this district have consistently held that a violation of the Truth in Lending Act ("TILA"), 15 U.S.C. § 1601 <u>et seq.</u>, is not a <u>per se</u> violation of the UTPCPL. <u>See, e.g.</u>, <u>Garczynski v. Countrywide Home Loans, Inc.</u>, 656 F. Supp. 2d 505, 514 (E.D. Pa. 2009); <u>Morilus v. Countrywide Home Loans, Inc.</u>, 651 F. Supp. 2d 292, 309 (E.D. Pa. 2008); <u>Christopher v. First Mutual Corp.</u>, No. 05-0115, 2008 WL 1815300, at *15 (E.D. Pa. Apr. 22, 2008). These judges have reasoned that allowing a TILA violation to constitute a UTPCPL violation would, <u>inter alia</u>, allow plaintiffs to raise otherwise time-barred

---

[4] Plaintiff also mentions the alleged YSP payment in her argument about direct liability, though it is unclear how payment of a YSP would constitute a UTPCPL violation. In any event, as discussed above, there is no evidence ESB paid a YSP.

TILA claims, contravening congressional intent.[5] See, e.g., Garczynski, 656 F. Supp. 2d at 515. Such would be the case here, as Santiago's TILA claims are all time-barred.

Second, even if the purported TILA violation in this case were a violation of the UTPCPL, plaintiff's claim would fail because she has not adduced any evidence that the Bank improperly hid any charges that it was required to disclose.

Plaintiff argues the TIL form "concealed" $362.72 of what TILA refers to as the "finance charge." The act defines the "finance charge" as the "sum of all charges, payable directly or indirectly by the person to whom the credit is extended, and imposed directly or indirectly by the creditor as an incident to the extension of credit." 15 U.S.C. § 1605(a). Interest, service charges and finder's fees are all included in the "finance charge." Id.

Contrary to plaintiff's assertions, however, none of the charges that make up the allegedly missing $362.72 are part of the "finance charge." The $362.72 consists of the following charges: (1) a $40 notary fee, (2) $11.72 for a credit report, (3) $225 for document preparation, (4) $35 for a "closing protection letter"[6] and (5) a $51 tax certification fee. All of these charges are excluded from the "finance charge" by TILA and/or its implementing regulations, so long as they are "bona fide and reasonable." See 15 U.S.C. § 1605(e)(1), (2), (4), (6); 12 C.F.R. § 226.4(c)(7)(i), (ii). Santiago has produced no evidence from which a jury could conclude that any of these charges are not "bona fide and reasonable." Hence, none of the charges is part of the "finance

---

[5] TILA claims are subject to either a one-year or three-year statute of limitations, 15 U.S.C. §§ 1635(f), 1640(e), whereas UTPCPL claims are subject to a six-year statute of limitations. 42 Pa. Cons. St. § 5527(b).

[6] A closing protection letter is a document that is part of the process for obtaining title insurance. See Bergin Fin., Inc. v. First Am. Title Co., No. 08-2453, 2010 WL 3272756, at *5 (6th Cir. Aug. 19, 2010).

charge" under TILA, and there is no genuine issue of material fact as to whether the total "finance charge" reported to Santiago was inaccurate.

**V. CONCLUSION**

For the foregoing reasons, ESB's motion for summary judgment is granted. An appropriate order follows.